UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| JADY L. CHANDLER, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) Case No. 08-2204 |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| sued as Michael J. Astrue, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

In August 2007, Administrative Law Judge (hereinafter "ALJ") Peter Caras denied Plaintiff Jady Chandler's application for disability insurance benefits (hereinafter "DIB") and supplemental security income (hereinafter "SSI"). The ALJ found that Plaintiff was not disabled because she can perform work that exists in significant numbers in the economy.

In September 2008, Plaintiff filed a Complaint for Judicial Review (#4) against Defendant, Michael Astrue, Commissioner of Social Security, seeking review of the ALJ's decision to deny her DIB and SSI. In January 2009, Plaintiff filed a Motion for Summary Judgment or Remand (#11). In May 2009, Defendant filed a Motion for an Order Which Affirms the Commissioner's Decision (#15). In August 2009, Defendant filed a Supplemental Memorandum In Support of Motion for Summary Affirmance (#17) and Plaintiff filed her Response to Defendant's Supplemental Memorandum (#18). After reviewing the record and parties' memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Plaintiff's Motion for Summary Judgment or Remand **(#11)** be **GRANTED**.

### I. Background
#### A. Procedural Background

In May 2005, Plaintiff filed an application for DIB and SSI claiming she became disabled in July 2001 due to asthma and affective/mood disorder. (R. 25.) The Social Security Administration (hereinafter "SSA") denied Plaintiff's application initially and upon reconsideration. (R. 43-47, 34-37.) In January 2006, Plaintiff filed a timely request for a

hearing. (R. 33.) In August 2007, the ALJ conducted the hearing. (R. 556.) At the hearing, an attorney represented Plaintiff and both Plaintiff and vocational expert (hereinafter "VE") Dr. James Lanier testified. (R. 537.) In October 2007, the ALJ denied Plaintiff's application. (R. 11-13.)

In July 2008, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (R. 6-8.) In September 2008, Plaintiff appealed the decision by filing a complaint with this Court pursuant to 42 U.S.C. § 405(g), requesting that the Court grant summary judgment in Plaintiff's favor or remand the case for rehearing.

### B. Factual Background

Both parties describe the factual background including Plaintiff's medical history in their memoranda, and the Court will not repeat it here.

### C. Testimony at the Hearing

In September 2008, the ALJ conducted a hearing to review Plaintiff's application for social security disability benefits and supplemental security income. Plaintiff and the VE testified at the hearing.

Plaintiff is 29 years old. She was 27 years old at the time of the hearing. Plaintiff testified that she had worked as a waitress for approximately eight months, but she never worked for more than four hours at a time because the stress of the job would exacerbate her anxiety. To accommodate her anxiety, the restaurant modified Plaintiff's schedule so that she worked only on weekdays and assigned Plaintiff fewer tables but Plaintiff testified that she continued to suffer from anxiety attacks even with these modifications. Plaintiff stated that she continued to request time off because the job was too stressful and the restaurant eventually told her she could not return to her job because she was taking too much time off.

Plaintiff was also fired from jobs as a coupon sales person, a cashier, and a telephone sales person because working caused her too much anxiety. Plaintiff was fired from a temporary job as a factory worker because her supervisor found her hiding in a box in the corner attempting to avoid other people. Plaintiff currently works one hour and 20 minutes a day at a school supervising children during their lunch hour. Plaintiff stated that she has difficulty working for that amount of time and would not be able to work more hours.

Plaintiff experiences shortness of breath and chest pains during her anxiety attacks. She stated that she has difficulty catching her breath and she "pretty much feel[s] like [she's] dying." (R. 560.) Plaintiff stated that some of her panic attacks have been so uncomfortable that she called friends and family to tell them she was dying. Plaintiff testified that she can only relieve this feeling by removing herself from the anxiety-causing situation for about half an hour. Xanax also helps to calm her. Plaintiff testified that she has had anxiety problems her entire life, but was not diagnosed until she was an adult.

Plaintiff testified that, a week before the hearing, she began classes to earn her GED, but she does not believe she will be able to complete the normal class because of her anxiety. She has moved to a table where she can sit alone, but this accommodation has not relieved her anxiety. Plaintiff has asked her teacher if it would be possible for a tutor to teach Plaintiff at her home so she would not have to attend the class.

Plaintiff experiences tremors in her extremities when she feels stressed or is around other people. She spends most days watching movies and playing games with her son. During the week, she attends GED classes from nine to eleven a.m. She then goes to work and arrives home before one o'clock. Plaintiff stays in her home for the rest of the day because she is too anxious to see anyone else. She cannot sleep the night before she goes grocery shopping because she feels too anxious. Plaintiff sometimes sends a friend to get her groceries for her. If she goes herself, she prefers to have a friend go with her because the experience causes too much anxiety.

She has a driver's license but prefers that other people drive on long trips. Plaintiff testified that she is unable to concentrate around people even when she does not feel anxious.

Plaintiff currently takes Xanax for her anxiety, Inderal for her tremors and heart, Trazodone to help her sleep, and Albuterol for her asthma. These medications have not helped significantly and they cause either nightmares or poor sleep.

Plaintiff testified that she shattered her left tibia attempting to save her son from a dog attack. Orthopedic surgeon Mark McAndrew operated on Plaintiff's leg and installed 14 screws and two metal plates. Plaintiff's left leg pain has recently increased, and Plaintiff testified that Dr. Kenneth Tuan believes it might be associated with the hardware and suggested that removal may alleviate the pain. Plaintiff does not use any assistive devices to walk and Vicodin does not ease her pain.

Plaintiff has had mitral valve prolapse (hereinafter "MVP") since childhood. Plaintiff stated that the MVP causes a sharp pain in her chest that feels worse during an anxiety attack.

The ALJ asked the VE to point out any inconsistencies between his testimony and the *Dictionary of Occupational Titles* (hereinafter "DOT") or other relevant labor manuals. (R. 575.) The ALJ then described a hypothetical younger individual with ten years of school who is limited to light or sedentary work with occasional climbing, balancing, stooping, kneeling, crouching, and crawling, but involving no ladders, ropes, or scaffolds. The ALJ described the hypothetical individual's mental limitations to the VE by limiting her to "[o]ccasional interaction with people. Unskilled work, one two step operations, and not regarded as very stressful, which I assume would be one two step operations, anyway, but lest there be doubt, I include that as a limitation." (R. 575.) The ALJ asked the VE if such an individual could perform Plaintiff's past work. The VE testified that such an individual would be able to perform the telephone solicitor job.

The ALJ then asked the VE if other jobs in the economy would satisfy these limitations. The VE stated that such an individual could perform the sedentary jobs of surveillance system monitor and glasses lens assembler or the light jobs of hand washer in the laundry industry, housekeeper, and hand presser. The VE testified that these jobs were not typically regarded as very stressful. An individual performing any of these jobs would be expected to maintain a 90 percent productivity level and miss no more than two days per month.

In response to a question by Plaintiff's attorney, the VE conceded that the telephone solicitor job involves more than occasional interaction if one considers the phone contact with people. Plaintiff's attorney then asked the VE if adding a limitation of no more than occasional fine finger manipulation would eliminate any of the jobs. The VE testified that this limitation would eliminate the sedentary positions. Plaintiff testified that she had worked as a hand washer at a hotel and her supervisor fired her because Plaintiff found the work overwhelming and cried.

### D. The ALJ's Decision

The SSA defines "disabled" as the inability "to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To determine whether a claimant is disabled within the meaning of the Social Security Act, the ALJ must proceed through a five-step analysis. 20 C.F.R. § 416.920(a-f). At each step, if the ALJ affirmatively finds the claimant disabled or not disabled, the inquiry ends, but if no determination can be made, the Commissioner proceeds to the next step. 20 C.F.R. § 416.920(a)(4). If the claimant is currently employed or was previously employed during the relevant period, she is not disabled. 20 C.F.R. § 416.920(a)(4)(i). The second question is whether the claimant has a severe medical impairment that will last at least twelve months. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant does not have a severe impairment, the inquiry ends. *Id*. However, if the claimant has a severe impairment, the third step is to ask whether the severe impairment meets or equals one listed in Appendix 1 to subpart P of part 404 of Chapter 20. 20 C.F.R. § 416.920(a)(4)(iii). If it does, the claimant is disabled. *Id*. If it does not, between steps three and four, the Commissioner determines the claimant's residual functional capacity, that is,

the work she is still able to perform despite limitations. 20 C.F.R. § 404.1545. The fourth question is whether
claimant is able to perform her past relevant work with her current impairment. 20 C.F.R. § 416.920(a)(4)(iv). If she can, then she is not disabled. *Id*. If she is not able to perform her past work, the fifth and final question is whether, with her current limitations, she can perform other work which exists in significant numbers in the national economy. 20 C.F.R. § 416.920(c)(1).

In the present case, at the first step, the ALJ found that Plaintiff had not engaged in substantial, gainful employment since her alleged onset date of July 2001. At the second step, the ALJ found that Plaintiff has the severe impairments of anxiety, panic disorder, depression, asthma, history of MVP, and history of left tibia fracture. (R. 16.) At the third step, the ALJ found that none of these impairments met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. At the fourth step, the ALJ found Plaintiff was not capable of doing her past relevant work. However, at the fifth step, the ALJ found that Plaintiff was able to perform jobs that exist in significant numbers in the economy, and was, therefore, not disabled.

## II. Standard of Review

The ALJ's decision is subject to review by this Court pursuant to 42 U.S.C. § 405(g) but the Court's role is "extremely limited." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). This Court does not review the facts *de novo*, rather, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Thus, if reasonable minds could differ as to whether or not a plaintiff is entitled to benefits, the court must uphold the ALJ's decision. *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996) (quoting *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)). This Court's task is to determine whether substantial evidence in the record supports the ALJ's decision. *Id.* at 977-78.

The Court defers to the ALJ's credibility findings. This deferential standard acknowledges that the reviewing court does not have the opportunity to hear and see witnesses, as the ALJ does. *Sims v. Barnhart*, 442 F.3d 536, 537-38 (7th Cir. 2006). Therefore, courts uphold an ALJ's credibility finding as long as the record affords some support for the finding.

### III. Discussion

Plaintiff argues that the Court should reverse or remand her case because the ALJ (1) made an improper credibility determination, (2) performed an erroneous step five analysis, and (3) made an incomplete residual functional capacity (hereinafter "RFC") finding that was not supported by substantial evidence. As to the third argument, Plaintiff specifically contends that the ALJ erred by failing to incorporate all of Plaintiff's limitations into the RFC and by relying on his own lay opinions when formulating the RFC. Both parties address this issue at length in their supplemental briefs. The Court finds this issue dispositive and will address it first.

### A. The ALJ's RFC Determination

Plaintiff contends that the ALJ's mental RFC finding fails to account for Plaintiff's panic attacks and anxiety, her marked limitations in the ability to work in coordination with others and to interact with the public, her moderate limitation in the ability to maintain attention, complete a normal workweek, get along with coworkers, and maintain socially appropriate behavior, and her moderate difficulties with maintaining concentration, persistence, and pace.

The Seventh Circuit court recently reiterated its position regarding whether it is appropriate for an ALJ to phrase hypothetical questions and mental RFC assessments in terms of the work a claimant can perform as opposed to describing a claimant's limitations and allowing the VE to determine on his own what types of work the claimant can perform. *Stewart v. Astrue*, 561 F.3d 679, 686 (7th Cir. 2009). In addressing the issue of whether the Commissioner was substantially justified for arguing that "the ALJ accounted for Stewart's limitations of concentration, persistence, and pace by restricting the inquiry to simple, routine tasks that do not require constant interaction with coworkers or the general public," the court stated that it had

"rejected the very same contention before." *Id.* In *Craft v. Astrue*, the court also found that the ALJ's limitation to simple, unskilled work did not adequately address a claimant's undisputed difficulty with concentration. *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008). Similarly, in *Young v. Barnhart*, the court found that a hypothetical question that limited a claimant to "simple, routine, repetitive, low stress work with limited contact with coworkers and limited contact with the public" was not sufficient to address that claimant's moderate limitation on his ability to interact with the general public. *Young v. Barnhart*, 362 F.3d 995, 1004 (7th Cir. 2004). *See also Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2003) (finding that a hypothetical question that includes borderline intelligence does not account for deficiencies in concentration). However, the Seventh Circuit court has allowed an ALJ to describe a claimant's limitations in terms of the work he can perform if the record contains a physician's opinion that a claimant may perform a certain type of work in spite of his limitations. Thus, the ALJ may rely on a physician's statement if the physician has translated the claimant's mental limitations into terms describing the work the claimant can perform.

Consistent with the case law on this issue, the Court concludes that an ALJ cannot, in general, translate a mental limitation into words describing work, such as unskilled, simple, repetitive, routine, one- or two-step, or any similar characterization, because these descriptions may not account for all the limitations a doctor meant to convey. *See Stewart*, 561 F.3d at 686; *Craft*, 539 F.3d at 677-68; *Young*, 362 F.3d at 1004; *Kasarsky*, 335 F.3d at 544. Only if a doctor used the descriptive language to describe what work a claimant can perform in spite of his limitations can the ALJ use those terms in the RFC or hypothetical questions to the VE. *See Johansen*, 314 F.3d at 289.

In the present case, State agency examiner Dr. Linda Lanier noted in her Psychiatric Review Technique form that Plaintiff had mild restrictions in activities of daily living and moderate difficulties in maintaining social functioning and maintaining concentration, persistence, or pace. (R. 411.) In assessing Plaintiff's mental RFC, she found that Plaintiff had moderate limitations in her abilities to: (1) maintain attention and concentration for extended periods, (2) complete a normal work-day and workweek without interruptions from

psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, (3) get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and (4) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness.  (R. 415-16.)  She also found that Plaintiff had marked limitations in her abilities to:  (1) work in coordination with or proximity to others without being distracted by them, and (2) interact appropriately with the general public. Dr. Lanier then stated as follows:  "[Claimant] retains the ability to understand, remember, and carry out simple and detailed instructions.  The [claimant] tends to have panic attacks when in crowds or under pressure.  She would work best away from the general public.  She is capable of SGA [(substantial gainful activity)]."  (R. 417.)

In his decision, the ALJ acknowledged that Plaintiff experiences anxiety attacks and has moderate difficulties in social functioning and concentration, persistence, or pace.  The ALJ concluded that these limitations did not prevent occasional interaction with others in the workplace or the performance of unskilled work involving one- to two-step operations.  (R. 19-20.)  The ALJ then described Plaintiff's mental RFC by limiting her to "unskilled work with one or two step operations with only occasional interaction with others in the workplace."  (R. 20.) The ALJ's hypothetical question to the VE included mental limitations as follows:  "Occasional interaction with people.  Unskilled work, one two step operations, and not regarded as very stressful, which I assume would be one two step operations, anyway, but lest there be doubt, I include that as a limitation."  (R. 575.)

After reviewing the ALJ's RFC description and question to the VE in light of Dr. Lanier's RFC assessment and her description of Plaintiff's mental RFC, the Court concludes that the ALJ's RFC description does not take into account all the limitations noted by Dr. Lanier in her assessments.  Accordingly, the Court recommends remanding this case for further consideration.

9

Although the Court recommends remand, some of Plaintiff's other arguments are relevant and may simplify the reconsideration process. Therefore, the Court will address the issues of credibility and whether the ALJ complied with SSR 00-4p.

### B. The ALJ's Credibility Determination

Plaintiff next argues that the ALJ improperly based his credibility finding on his own lay opinion of the medical evidence.

When evaluating an ALJ's credibility determination, courts give great deference to the assessment because the ALJ has the ability to see and hear witnesses who testify at the hearing. *Sims*, 442 F.3d at 537-38; *Edwards v. Sullivan*, 985 F.2d 334, 337 (7th Cir. 1993). Therefore, the Court will generally not disturb an ALJ's credibility determination as long as it has some support in the record. *Edwards*, 985 F.2d at 337. In a recent decision, the Seventh Circuit court stated that a court reviewing a credibility determination "merely examine[s] whether the ALJ's determination was reasoned and supported." *Elder*, 529 F.3d at 413 (citing *Jens v. Barnhart*, 347 F.3d 209, 213-14 (7th Cir. 2001)). "[O]nly when the ALJ's determination lacks any explanation or support . . . [will we] declare it to be patently wrong." *Id.* at 413-14.

In the present case, the ALJ found Plaintiff not entirely credible concerning her mental and physical limitations because the severity of her reported symptoms was not consistent with the medical record or her reported daily activities. The ALJ noted that despite Plaintiff's allegations of disabling anxiety, she is able to work part-time, run errands, and attend GED classes. Plaintiff contends that the ALJ failed to mention that Plaintiff has reported that each of these activities cause her to have panic attacks. However, the ALJ expressly found Plaintiff's reports of the severity of her symptoms not entirely credible, rendering Plaintiff's argument unpersuasive.

The ALJ also noted that no physician or psychiatrist has suggested specific mental functional restrictions and Plaintiff refuses to attend the group therapy sessions her doctors have recommended. Plaintiff contends that the ALJ should not have considered her reluctance to

attend group therapy in formulating a credibility assessment because her anxiety itself might prevent her from attending group sessions. However, the Seventh Circuit court has held that failure to seek treatment constitutes valid information for an ALJ to consider when making a credibility assessment. *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005). Furthermore, none of Plaintiff's doctors suggested that her anxiety was what prevented her from attending group therapy sessions so the ALJ would have no objective medical evidence from which to conclude that Plaintiff's anxiety prevented her from attending group therapy.

Thus, the ALJ explained his reasons for finding that Plaintiff was not entirely credible. In light of the standard articulated in *Elder*, the Court cannot conclude that the ALJ patently erred by determining that Plaintiff was not entirely credible.

### C. ALJ's Reliance on the VE's Testimony

Plaintiff next argues that the Court should reverse or remand the ALJ's decision because the ALJ did not inquire whether the VE's testimony was consistent with the DOT. Under SSR 00-4p, the ALJ satisfies his duty if the ALJ (1) asks the VE whether any conflict exists; and (2) obtains a reasonable explanation for and resolves any conflict that is identified. Thus, where the ALJ does inquire, and no conflict is identified, the ALJ may rely on the VE's testimony. *See Donahue v. Barnhart*, 279 F.3d 441, 445-47 (7th Cir. 2002) (stating in dictum (because SSR 00-4p was promulgated subsequently and thus was not directly applicable) that where no conflict was identified at the hearing, the ALJ's reliance on the VE's testimony was proper, and the plaintiff was foreclosed from raising the conflict on appeal).

The Court disagrees with Plaintiff's statement that the ALJ never inquired about inconsistencies between the VE's testimony and the DOT. In the present case, at the beginning of the VE's testimony, the ALJ stated, "as always, point out to us any conflicts wit the DOT or other relevant labor manuals." (R. 575.) This Court does not agree with the position that an inquiry *prior* to the VE's testimony cannot satisfy an ALJ's duty under SSR 00-4p. Here, the ALJ asked the VE to identify any inconsistencies between his testimony and the DOT. During his testimony, the VE did not mention any conflicts. Furthermore, Plaintiff failed to identify any

11

potential conflicts at the hearing. Therefore, consistent with *Donahue*, this Court concludes that the ALJ fulfilled his duties under SSR 00-4p.

Because the Court recommends remand for reconsideration of issues related to Plaintiff's mental RFC, the Court will not address Plaintiff's remaining arguments regarding the ALJ's reliance on the VE's testimony.

### IV.  Summary

For the reasons stated above, this Court recommends that Plaintiff's Motion for Summary Judgment or Remand **(#11)** be **GRANTED** and that the case be remanded for reconsideration consistent with this Report and Recommendation. The parties are advised that any objection to this recommendation must be filed in writing with the clerk within ten working days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTER this 3rd day of September, 2009.

s/ DAVID G. BERNTHAL<br>
U.S. MAGISTRATE JUDGE